**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., § | | |
| as Broadcast Licensee of the October 6, 2007 § | | |
| "Will to Win" Pacquiao/Barrera Event, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-10-03677 | |
| § | | |
| Q&Q CORPORATION, INC., individually § | | |
| and d/b/a Safiro Nite Club, *et al.*, § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM AND OPINION**

J&J Sports Productions, Inc. sued Q&Q Corporation, Inc., d/b/a Safiro Nite Club, and its owner, Enrique Quintanilla (collectively, "the defendants"), alleging that they intercepted and broadcasted a pay-per-view boxing match without authorization. J&J Sports raised causes of actions under 47 U.S.C. §§ 553 and 605. It now moves for summary judgment on those claims. (Docket Entry No. 12). The defendants oppose the motion. (Docket Entry No. 13).

Based on the pleadings, the motions, the summary-judgment record, and the applicable law, this court dismisses the claims brought under 47 U.S.C. § 553; denies summary judgment on the § 605 claim against Quintanilla; and grants summary judgment on the § 605 claim against Q&Q Corporation. The reasons are explained below.

**I.   Background**[1]

---

[1] The facts come from the summary-judgment record, which consists of the affidavit of Thomas Riley, (Docket Entry No. 12, Exh. A); J&J Sports's closed-circuit-television license agreement, (*id.*, Exh. A-1); the affidavit, (*id.*, Exh. A-2); and J&J Sports's closed-circuit rate card, (*id.*, Exh. A-3).
   The defendants object to Riley's and Gonzales's affidavits. The defendants specifically object to paragraphs nine through fifteen of Riley's affidavit as lacking factual support. (Docket Entry No. 13, ¶¶ 4–6). Because this court is postponing a decision on damages, it need not consider paragraphs eleven through fifteen. Paragraphs nine and ten

Golden Boy Promotions, Inc. and Top Rank, Inc. were promoters of a boxing match between Manny Pacquiao and Marco Antonio Barrera and that match's undercard (i.e., the boxing matches that immediately preceded it) ("the Event"). (Docket Entry No. 12, Exh. A-1). The Event was to be held on October 6, 2007 at the Mandalay Bay Events Center in Las Vegas. (*Id.*) On September 18, 2007, J&J Sports entered into an agreement with Golden Boy Promotions and Top Rank under which J&J Sports had the exclusive right to sell closed-circuit-television licenses to "commercial exhibition outlets," such as bars and restaurants. (*Id.*). For outlets seating between one and fifty people, J&J Sports sold the license for $800. (*Id.*, Exh. A-3). The Event would be displayed on a closed-circuit channel on DirecTV, a satellite-television provider. (*Id.*) To prevent piracy, "the interstate satellite transmission of the Event was electronically coded or scrambled." (*Id.*, Exh. A-1, ¶ 7). "If a commercial establishment was authorized by [J&J Sports] to receive the Event, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal[,] or the establishment's cable or satellite provider would be notified to unscramble the reception of the Event for the establishment, depending upon the establishment's equipment and provider." (*Id.*)

At 10:13 p.m. on the night of the Event, Maria Gonzales, an auditor for Auditmasters, entered the Safiro Nite Club. (*Id.*, Exh. A-2, ¶¶ 1–3). She counted fifteen people and one television. (*Id.*, ¶ 3). On that television, the Club "was displaying the MARCO ANTONIO BARRERA VS

---

are supported by a factual foundation uncontested by Q&Q: J&J Sports hired Riley to discover, investigate, and prosecute Communications Act violations arising from the boxing match. (Docket Entry No. 12, Exh. A, ¶ 3). Riley has personal knowledge of the matters stated within those two paragraphs. This court disregards (without resolving the evidentiary dispute) the statement in paragraph nine that "an auditor observed the [E]vent . . . ." (*Id.*, ¶ 9).

This court need not consider Gonzales's audit checklist at this stage. As for Gonzales's affidavit, however, it is admissible as the sworn statement of a person providing her personal observations of what she witnessed. *See* FED. R. EVID. 602, 603. The contention that J&J Sports did not introduce evidence linking the Luevano/Davis fight to the Barrera/Pacquiao fight is considered below. (*See* Docket Entry No. 13, ¶ 8).

MANNY PACQUIAO and/or its undercard preliminary bouts." (*Id.*, ¶ 3). Gonzales noticed that the Event was on Round Ten of the undercard match between Steve Luevano and Antonio Davis. (*Id.*, ¶ 4). She also noticed a Mandalay Bay logo on the boxing-ring mat, a Mandalay Bogo on the boxing-ring post, and a Golden Boy Productions banner over the boxing ring. (*Id.*).

J&J Sports had not sold a license to the Club. (*Id.*, Exh. A, ¶ 9). "In order for an unauthorized commercial establishment to receive . . . the Event, there must be some wrongful action, such as using an unauthorized decoder or satellite access card, obtaining cable or satellite service and illegally altering the cable or satellite service to bring the signal of the Event into the establishment, or moving an authorized decoder or satellite card from its authorized location to the commercial establishment." (*Id.*, ¶ 10).

The defendants admit that Q&Q Corporation operates the Club. (Docket Entry No. 6, ¶ 2). They deny that Quintanilla is an owner or manager of the Club, is an officer or owner of the entity owning the Club, has the right to supervise the Club's activities, and has a direct financial interest in the Club's activities. (*Id.*, ¶ 3). J&J Sports has introduced no controverting evidence.

**II.     The Summary-Judgment Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted). "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary-judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). Nevertheless, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

**III.     Analysis**

    **A.     47 U.S.C. §§ 553 and 605**

J&J Sports raised claims under both 47 U.S.C. §§ 553 and 605 for the same conduct: intercepting and broadcasting the Event. Section 553 prohibits theft of communications from a cable network. Section 605 prohibits theft of radio communications. *J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 471 (E.D.N.Y. 2009) (citing *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 132–33 (2d Cir. 1996)). Courts across the country have held that § 605 is violated by the interception and broadcast of satellite-television programming. *E.g.*, *J&J Sports Prods., Inc. v. Angulo*, — F. Supp. 2d —, 2011 WL 528968, at *3 (N.D. Ill. 2011); *Joe Hand Promotions, Inc. v. Tip Off, Inc.*, No. 3:08CV-600-S, 2010 WL 694212, at *3 (W.D. Ky. Feb. 23, 2010); *Kingvision Pay-Per-View v. Guzman*, No. C-09-00217-CRB, 2009 WL 1475722, at *2 (N.D. Cal. May 27, 2009); *Don King Prods., Inc. v. Comite Partido Popular Democratico*, 441 F. Supp. 2d 370, 373 (D. P.R. 2006); *That's Entertainment, Inc. v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993); *see also DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("it is clear from the case law since the 1984 amendments that the 'communications' protected by § 605(a) include satellite television signals"). By contrast, § 553 is violated by the interception and broadcast of cable-television programming. *E.g.*, *J&J Sports Prods., Inc. v. Basto*, No. C-10-5122-PJH, 2011 WL 2197756, at *3 (N.D. Cal. June 6, 2011); *Tip Off, Inc.*, 2010 WL 694212, at *3; *J&J Sports Prods., Inc. v. Long*, No., 2009 WL 1563914, at *1 (E.D. Pa. June 3, 2009). *TCI Cablevision of New England v. Pier House Inn, Inc.*, 930 F. Supp. 727, 734 (D. R.I. 1996).

Assuming that the defendants intercepted and broadcasted the Event without authorization, there is no evidence that they did so by intercepting a cable-television signal. Rather, the evidence shows that the Event was broadcast through satellite television. (*See* Docket Entry No. 12, Exh. A, ¶ 7 ("In order to safeguard against the unauthorized interception or receipt of the Event, the

5

interstate *satellite transmission* of the Event was electronically coded or scrambled . . . ." (emphasis added)); Exh. A-3 ("Fight will air on DIRECTV channels 579.")). J&J Sports's claim against the defendants lies are under § 605, and the § 553 claims are dismissed.

### B. Quintanilla

J&J Sports moves for summary judgment on both claims against Quintanilla. The defendants respond that summary judgment is inappropriate against Quintanilla because J&J Sports failed to present evidence linking him to the Club. (Docket Entry No. 13, ¶ 12).[2] The record does not include evidence responding to Quintanilla's denial of a relationship with the Club. (Docket Entry No. 6, ¶ 3). With no evidence linking Quintanilla to the Club or its activities during the Event, summary judgment against him is inappropriate.

### C. Q&Q Corporation

Q&Q Corporation's sole defense against summary judgment is that a genuine issue of material fact exists as to whether the Club was showing the Event. According to Q&Q Corporation, J&J Sports presented no evidence establishing that the Luevano/Davis match was on the Event's undercard. The defendants argue that J&J Sports has not established that the Club was actually showing the Event. (Docket Entry No. 13, ¶¶ 9–11). The argument is without merit. Gonzales stated that she saw "the MARCO ANTONIO BARRERA VS MANNY PACQUIAO *and/or its undercard preliminary bouts*" on the evening of October 6, 2007, (Docket Entry No. 12, Exh. A-2, ¶ 3 (emphasis added)), the date of the Event. (*Id.*, Exh. A-1). She then described that she saw a match between Luevano and Davis. (*Id.*, Exh. A-2, ¶ 4). That description is consistent with an

---

[2] The defendants raise the same allegation vis-à-vis Q&Q Corporation and the Club. (Docket Entry No. 13, ¶ 13). No evidence is necessary here, however, for the defendants admitted in their answer that Q&Q is a Texas Corporation doing business as Safiro Nite Club. (Docket Entry No. 6, ¶ 2).

"undercard preliminary bout" for the Event. Gonzales also stated that throughout the boxing ring she saw logos for Mandalay Bay, which hosted the Event, and Golden Boy Productions, one of the two promoters of the Event. (Docket Entry No. 12, Exh. A-1; Exh. A-2, ¶ 4). J&J Sports has presented sufficient evidence to meet its burden under Rule 56(a) that there is no genuine dispute of material fact as to whether the Club was broadcasting the Event. The defendants have not cited any controverting evidence. *See* FED. R. CIV. P. 56(e). The defendants instead rely on a version of this argument: "Because J&J Sports did not introduce evidence specifically stating that the Luevano/Davis match was on the Event's undercard, a disputed fact exists as to whether that match was on the undercard." (*See* Docket Entry No. 13, ¶¶ 9–11). That argument fails to recognize the record evidence presented by J&J Sports. This court considers the fact that the Luevano/Davis match was on the Event's undercard as undisputed for purposes of this summary-judgment motion. *See* FED. R. CIV. P. 56(e)(2). It is undisputed that the Club showed the Event, and it did so without a license by illegally intercepting the satellite transmission. J&J Sports is entitled to summary judgment on its § 605 claim against Q&Q Corporation.

**D.     Damages**

J&J Sports is entitled to damages under 47 U.S.C. § 605(e). It has asked for the maximum statutory damages of $10,000, *see id.* § 605(e)(3)(C)(i)(II), in addition to willful-violation damages of $50,000, *see id.* § 605(e)(C)(ii). (Docket Entry No. 12, at 20). The basis for willful-violation damages is conclusory. (*See, e.g.*, Docket Entry No. 12, Exh. A, ¶ 16 ("Because the Event was broadcast to the patrons of Defendants' Establishment, Defendants' only purpose and intent in exhibiting the Events was to secure a private financial gain and direct commercial purposes . . . .")). Summary judgment on damages cannot be granted on the present record.

**IV.     Conclusion**

J&J Sports's claims under 47 U.S.C. § 553 are dismissed. J&J Sports's motion for summary judgment on its claims under 47 U.S.C. § 605 is denied as to Quintanilla and granted as to Q&Q Corporation.

SIGNED on September 23, 2011, at Houston, Texas.

                                                   Lee H. Rosenthal
                                                   United States District Judge